GOVERNMENT OF the VIRGIN ISLANDS, Appellee,

v.

Aldain WEBBE, Appellant.

No. 86–3582.

United States Court of Appeals, Third Circuit.

Argued May 1, 1987.

Decided June 16, 1987.

---

James W. Diehm, U.S. Atty., James S. Carroll, III (argued), Asst. U.S. Atty., Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellee.

James L. Hymes, III (argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellant.

Before SEITZ, HIGGINBOTHAM, ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The appellant, Aldain Webbe, appeals from the final judgment of the district court imposing a sentence for a conviction of second degree murder. We have jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

Aldain Webbe was charged with one count of murder in the first degree in connection with the beating death of his estranged wife in February 1985. Webbe pleaded not guilty and elected to waive his right to a jury trial.

In a two-day bench trial in August 1986, Webbe's principal defense was that of insanity, based on a diagnosis of paranoid schizophrenia. At the end of the first day of testimony, Webbe's counsel moved that the information charging Webbe with first degree murder be dismissed, on the ground that the government had failed to make out a prima facie case. The court refused to dismiss the information. Because the evidence did not support premeditation and deliberation,[1] however, the court reduced the charge to the lesser included offense of murder in the second degree.

The following facts were elicited at trial. On the day of his wife's death, Webbe had just returned to the Virgin Islands after an extended stay in the United States. Upon entering his wife's residence, Webbe apparently found a note to her left by Basil Bassue, a man she was seeing. Bassue had been seen with Mrs. Webbe the morning of her death. She was later seen alive with Webbe well after Bassue had left.

Responding to a reported fire at Mrs. Webbe's house later that evening, police found the victim's bloody body in a bedroom, and encountered the defendant, who had blood on his face and clothes. Webbe was taken into police custody. A blood alcohol test taken several hours after the crime revealed a level of .10.

At the close of the trial, the court found Webbe guilty of second degree murder. On September 17, 1986 Webbe was sentenced to 40 years imprisonment. This appeal followed.

---

**1.** Specifically, the court found that because Webbe's blood alcohol level was elevated several hours after the killing, this indicated that he was well under the influence of alcohol at the time of the killing, precluding a finding of premeditation and deliberation. *See Government of the Virgin Islands v. Carmona*, 422 F.2d 95 (3rd Cir.1970).

## II.

Webbe's sole contention on appeal is that the district court erred when it decided that his voluntary intoxication precluded his use of the insanity defense.[2] We believe that this argument misstates the district court's ruling. In reviewing the record of the district court, we find that while the court may have expressed this view on the effect of intoxication on the insanity defense, its ruling was actually based on the finding that Webbe's acts which brought about the death of his wife were not committed in consequence of the mental illness from which he suffered. The government contends that this was a finding that could be made on the evidence and was not clearly erroneous. Our review of the trial court's findings of facts is based on the clearly erroneous standard. *United States v. Felton,* 753 F.2d 276 (3rd Cir.1985).

The test of insanity in the Virgin Islands requires both a mental illness and a causal connection between that illness and the acts committed:

> All persons are capable of committing crimes and offenses except ... persons who are mentally ill and who committed the act charged against them in consequence of such mental illness.

14 V.I.C. § 14(4). *See also, Government of the Virgin Islands v. Downey,* 396 F.Supp. 349, 12 V.I. 39, 46–48 (1975).

Although a defendant is ordinarily presumed sane, once some evidence of insanity is introduced, the prosecution has the burden of proving sanity beyond a reasonable doubt. *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *United States v. Lutz,* 420 F.2d 414 (3rd Cir.), *cert. denied* 398 U.S. 911, 90 S.Ct. 1709, 26 L.Ed.2d 73 (1970). Thus, under Virgin Islands law, if there is some evidence that defendant's act was a consequence of mental illness, the government has the burden of proving beyond a reasonable doubt that the offense was not the consequence of a mental illness. *Government of the Virgin Islands v. Bellott,* 495 F.2d 1393, 1397 (3rd Cir.1974).

In the instant case, Webbe introduced the testimony of Dr. Olaf Hendricks, a psychiatric expert witness. Dr. Hendricks testified that at the time of Mrs. Webbe's death, and for over a year prior to the crime, Webbe had been suffering from paranoid schizophrenia, a mental disease. Dr. Hendricks further indicated that Webbe's disease had been in a state of remission prior to the crime, but that several stresses, including jealousy, feelings of rejection, and the ingestion of alcohol, had caused the disease to express itself on that day.

When questioned on the causal connection between Webbe's illness and his actions, Dr. Hendricks was initially hesitant to assign the mental illness as the cause. He stated that it was hard to say whether Webbe's illness was the cause of the homicide, but that through the process of jealousy, it expressed itself and played a causative role. Other possible causal factors included Webbe's feeling of having been rejected by his wife and his drinking.

When challenged on cross examination, Dr. Hendricks stated that Webbe was a schizophrenic who was previously in remission. He further explained that although Webbe's schizophrenia probably caused him to act the way he did, it was not the sole cause when considering other factors such as Webbe's alcohol ingestion.

Finally, in response to direct questioning by the court, the psychiatrist stated that he believed that Webbe committed the act as a

---

2. In his brief, Webbe did not discuss the district court's rulings, but supported the premise for his contention by quoting an exchange that occurred between the court and the psychiatric expert witness:

> THE WITNESS: ... I think he committed that act as a consequence of that illness. ... the thing that happened is that there were some contributory factors which caused his illness to express itself. For instance, I believe that if Mr. Webbe did not drink that day, his pre-existing mental condition would have remained dormant.
>
> THE COURT: You see, that kills the test. Because if he voluntarily intoxicated himself, which triggered the illness, that is a different thing.... [I]f he is in a state of remission and imbibes alcoholic beverages, which takes him out of that state of remission and now makes his illness acute or active, to the extent that it then causes him to do certain things, that is not the test that this law requires.

consequence of his illness, paranoid schizophrenia. The court noted that this contradicted what he had said before on repeated occasions. In response, Dr. Hendricks stated that there were contributory factors that caused the disease to express itself, and that if Webbe had not been drinking on that day, his pre-existing mental condition would have remained dormant.

In rebuttal, the government offered into evidence the deposition of Dr. Freda Lewis Hall, another psychiatrist who had examined Webbe. Dr. Hall disagreed with Dr. Hendricks' assessment of Webbe's mental condition. Based upon her examination of Webbe, she was of the opinion that he did not commit the acts in consequence of a mental illness.

At the conclusion of the evidence, the court rendered its findings of fact, conclusions of law and verdict. *See United States v. Webbe*, No. 85–00013 (August 5, 1986) (unpublished bench opinion). After finding that Webbe had unlawfully killed his wife, the court noted that the only way that Webbe could be absolved of guilt from the crime of murder in the second degree would be if the government had not overcome the defense of mental illness. The court found beyond a reasonable doubt that the government had overcome this defense.

In making this finding, the court stated that the government had overcome the defense of insanity "principally because even on this defendant's own expert testimony, he was in a state of remission and in that state of remission he would not be under the compulsion of his mental illness, which would lean to a finding that he committed the act charged in consequence of that mental illness." *Id.*, Tr. at 82. The court then added that even if Webbe reverted to an acute state of his illness, it would be its finding that the reversion was solely due to the ingesting of excessive quantities of alcohol.[3]

In conclusion, the court stated:

So, under all of the evidence, I find that the government has overcome the very strict standards that our law imposes, and beyond a reasonable doubt I find that while he was suffering from a form of mental illness at the time of this occurrence, mainly paranoid schizophrenia, these acts which brought about the death of this woman were not committed in consequence of it.

*Id.* at 85. *Cf. Government of the Virgin Islands v. Crowe*, 391 F.Supp. 987, 11 V.I. 441 (D.V.I.1975) (Although the defendant was found to suffer from schizophrenia, the insanity defense was not available where it was found that the crime was not committed in consequence of his schizophrenia).

■ The district court's finding that Webbe's crime was not committed in consequence of his mental illness was based on the facts and was not clearly erroneous. The court's finding that Webbe's illness was in a state of remission at the time of the offense had support in the testimony of both Dr. Hall and Dr. Hendricks. The court was justified in discounting Dr. Hendricks' eventual testimony that Webbe committed the act in consequence of his mental illness, given the doctor's earlier hesitancy to assign such a causal connection. Further, the court had the deposition of Dr. Hall, who did not find such a connection.

Moreover, the district court's conclusion that Webbe was not acting in consequence of his mental illness is buttressed by its further findings that his purposeful behavior after the killing suggests that he was not delusional at this time. The court further supported its conclusion by noting that there was an adequate explanation for Webbe's conduct separate and apart from

---

**3.** Webbe based his appeal on the contention that the district court erred in finding that his voluntary intoxication precluded his use of the insanity defense. However, it is clear from a reading of the district court's findings that its views on the effect of intoxication on the use of the insanity defense were offered as an alternative explanation to its principal finding that Webbe was in a state of remission when the crime was committed. The court's findings on the effect of Webbe's ingestion of alcohol were not logically necessary to its ultimate conclusion that he did not commit the act charged against him in consequence of his mental illness.

his mental illness: he might have killed his wife because of feelings of jealousy and rejection.

### III.

Based on all of the above, we hold that the trial court's finding that Webbe did not commit the act charged against him as a consequence of his mental illness was not clearly erroneous. Accordingly, we will affirm the judgment of the district court.