**LESLIE NIBBS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-113

Supreme Court of the Virgin Islands

August 19, 2009

BARBARA ARCHIBALD, ESQ., Law Offices of Karin A. Bentz, P.C., St. Thomas, USVI, *Attorney for Appellant.*

TIFFANY V. ROBINSON, ESQ., Virgin Islands Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 19, 2009)

PER CURIAM. The People of the Virgin Islands charged Leslie Nibbs with various offenses stemming from a domestic altercation in which

Nibbs stabbed his brother with a knife. Nibbs had a history of psychiatric problems, and prior to trial he was evaluated by a psychiatrist. The psychiatrist found that at the time of the stabbing Nibbs suffered from chronic schizophrenic disorder and that "his criminal act was committed in consequence of the mental disorder." (J.A. at 32.) Nibbs verbally notified the People's attorney that he intended to assert an insanity defense at trial. Nibbs also filed the psychiatrist's report with the trial court as part of an "Informational Motion" and served the motion on the People. However, Nibbs never filed a formal written notice under Rule 12.2(a) of the Federal Rules of Criminal Procedure of his intent to assert an insanity defense. Following a bench trial, the Superior Court ruled that Nibbs failed to present timely written notice of his intent to rely on an insanity defense and found him guilty on all counts charged in the Information. Nibbs filed this appeal challenging the sufficiency of the evidence and the trial court's finding that he did not timely comply with the notice requirements in Rule 12.2(a).[1] Because we conclude that, under the unique circumstances of this case, the trial court abused its discretion in rejecting Nibbs's insanity defense, the judgment of conviction will be reversed.

## I. JURISDICTION AND STANDARDS OF REVIEW

This Court has jurisdiction to review the trial court's Judgment and Commitment pursuant to title 4, section 32(a) of the Virgin Islands Code which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." We review the Superior Court's determination that Nibbs failed to provide timely notice of his insanity defense pursuant to Rule 12.2(a) under an abuse of discretion standard. *See United States v. Cameron*, 907 F.2d 1051, 1057 (11th Cir. 1990); *United States v. Cox*, 826 F.2d 1518, 1522-23 (6th Cir. 1987) (collecting cases). In considering Nibbs's assertion that the evidence was insufficient to support his convictions, our standard of review of the trial court's finding of guilt is the same as when we review convictions based on jury verdicts of guilty: whether the evidence admitted at trial, viewed

---

[1] Nibbs also asserts that he was denied effective assistance of counsel. It is unnecessary to address this assertion, however, because we conclude that his convictions should be reversed on other grounds.

in a light most favorable to the People, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *See Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009); *United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir. 2007).

## II. FACTS AND PROCEDURAL HISTORY

Viewed in a light most favorable to the People, the evidence shows that Nibbs lived with his brother, Larry Nibbs ("Larry"), their mother and a cousin in a four-bedroom house on St. Thomas. On November 18, 2004, the date of the stabbing, Nibbs came home with a bag containing a fetid smelling dead animal.[2] When Nibbs deposited the bag in his bedroom, Larry asked him to remove it from the house. Nibbs refused, and when Larry attempted to take the bag out of Nibbs's room, a struggle ensued. During the struggle, Nibbs stabbed Larry with a knife. When the cousin intervened and attempted to call the police, Nibbs threatened the cousin. Eventually, the cousin took Larry to the hospital, and Nibbs fled from the house. Nibbs was arrested two days later when he returned to the house.

The People charged Nibbs with third degree assault (domestic violence), in violation of title 14, section 297(2) and title 16, section 91(b)(1) and (2) of the Virgin Islands Code; possession of a dangerous weapon, in violation of title 14, section 2251(a)(2); simple assault (domestic violence), in violation of title 14, section 299(2) and title 16, section 91(b)(1) and (2);[3] and disturbing the peace (domestic violence), in violation of title 14, section 622(1) and title 16, section 91(b)(1). The Office of the Public Defender was appointed to represent Nibbs. At a pretrial conference held on March 21, 2005, both the People's attorney and Nibbs's attorney informed the court that they believed Nibbs "may not be competent to stand trial." (J.A. at 30.) Nibbs's attorney stated that he would retain a psychiatrist, Dr. Leighmin J. Lu, ("Dr. Lu") to conduct a psychiatric evaluation of his client.

Dr. Lu reported his findings in a letter dated April 4, 2005. The letter states:

> The inmate Mr. Leslie Nibbs has been under my care intermittently since 1978. He has a total of 13 psychiatric hospitalization[s] between

---

[2] It appears that the dead animal was a chicken, rooster or some other type of fowl.

[3] The People erroneously listed this charge as third degree assault on the Information.

1978 and 1990 under the diagnosis of paranoid schizophrenia. He was also treated at the Bureau of Correction[s] on several occasions. Presently he is under . . . psychotropic medications . . . . His symptoms consist[] of delusional thought, bizarre ideation, distortion of reality and auditory hallucination.

Presently, in my opinion, he is considered to be competent to stand trial, however, he was suffering from chronic schizophrenic disorder at the time of [the] alleged criminal offense, and . . . his criminal act was committed in consequence of the mental disorder.

(J.A. at 32.) On April 5, 2005, Nibbs filed Dr. Lu's letter with the Superior Court as part of an "Informational Motion" which simply stated that counsel was submitting the attached psychological evaluation of the defendant. The certificate of service indicates that Nibbs served the motion on the People, and a date receipt stamp on a copy of the motion contained in the Joint Appendix reveals that it was received by the Department of Justice on April 6, 2005. In an order entered April 5, 2005, the Superior Court required the People to "advise the Court how they wish to proceed" in light of Dr. Lu's report. (J.A. at 34.) The court attached a copy of Dr. Lu's letter to the order, which further stated that the People needed to respond no later than April 22, 2005. It does not appear that the People ever responded to the Superior Court's April 5, 2005 order.

On September 2, 2005, the Superior Court held a pretrial conference. At the conference Nibbs waived his right to a jury trial and verbally informed the court and the People that he intended to assert an insanity defense at trial. On October 7, 2005, immediately preceding the scheduled bench trial, the People's attorney recounted the events of the pretrial conference, reporting to the judge:

Your Honor, the Court and the People were advised at our last pretrial conference that the defendant in this matter wished to proceed with a[n] . . . insanity defense to the charges that were filed against him in these matters. We had discussed with [defense counsel] that the Government, after being made aware that Dr. Lu would have been absent for this trial, we agreed, Your Honor, that we would stipulate to any psychiatric evaluations if the defense would also stipulate to the medical records of the victim. That agreement has been made, Your Honor . . . .

(J.A. at 64-65.) Although the People's attorney further stated that the People "never received a copy of the psychiatric evaluation" (J.A. at 65), it is clear that both Nibbs and the Superior Court sent copies of the letter to the People at the Department of Justice, and that the Department of Justice received the letter and the Informational Motion sent by Nibbs.

Upon confirming that both parties agreed to the stipulations, the Superior Court proceeded with a bench trial on the charges against Nibbs. The court heard testimony from the sole witness for the prosecution, Nibbs's brother, Larry. Larry described what happened on the day of the stabbing when Nibbs brought the fetid smelling, dead animal into the house, and further testified about Nibbs's history of mental illness. He testified that, as long as he could remember, Nibbs had always had a "mental problem" and that because of the disability Nibbs could not hold a job and received Social Security benefits. (J.A. at 71.) He further testified that, before Nibbs lived in the home with his mother, brother and cousin, he lived in an adjacent building which Nibbs burned down. According to Larry, after Nibbs moved into the family home, the refrigerator door and kitchen cabinets had to be locked because Nibbs often "just [went] into the cabinets and open[ed] stuff" and placed items like "feathers in the water" and pebbles in the refrigerator. (J.A. at 72-73.) On one occasion, Larry found Nibbs cooking an iguana in a pot on the kitchen stove. When Larry confronted Nibbs about the iguana, Nibbs became violent and wanted to fight. Nibbs did not present any witnesses at trial and rested his defense after tendering Dr. Lu's stipulated letter into evidence.

Following the presentation of evidence, Nibbs moved the Superior Court to enter a verdict of not guilty based upon the mental disorder described in Dr. Lu's report. The prosecutor responded that the People had proven, beyond a reasonable doubt, that Nibbs committed the charged crimes. After hearing arguments, the trial judge asked Nibbs's counsel why the court should not convict Nibbs of the charged offenses in light of the fact that the defense never filed a written notice of intent to present an insanity defense as required by Rule 12.2(a) of the Federal Rules of Criminal Procedure. Nibbs's trial attorney, who had not represented

Nibbs during earlier stages of the proceedings,[4] acknowledged that it did not appear that prior defense counsel had filed a Rule 12.2(a) notice, but pointed out that the People were "notified verbally that that would be [Nibbs's] defense." (J.A. at 93-94.) The court inquired about counsel's suggestion that verbal notice was sufficient and further questioned the propriety of Nibbs's offer to submit a Rule 12.2(a) notice after the trial was completed.

Without ruling on Nibbs's motion for an acquittal based on the evidence supporting his insanity defense, the Superior Court issued its findings of fact from the bench. The court described the evidence surrounding the altercation and found that the People had proven, beyond a reasonable doubt, "each and every element of the four count Information." (J.A., at 106.) But the court also recognized the evidence concerning Nibbs's history of mental illness and Dr. Lu's report that Nibbs "was suffering from chronic schizophrenia disorder at the time of the alleged criminal offense, and that his criminal act was committed in consequence of the mental disorder." (J.A. at 105.) Reflecting on her concerns about Nibbs's failure to file a written Rule 12.2(a) notice prior to trial, the trial judge stated:

> the Court . . . sees that there may be a problem in trying to interpose a not guilty plea by reason of insanity without going through the required 12.2 sub (1) proceedings.[5] So the Court is in a position where either the Court has to look at a properly imposed not guilty by reason of insanity defense, in which the Court finds that the Government has not met its burden because all they have to do is raise it, and the Government would have the burden to prove beyond a reasonable doubt that the defendant was sane, and the Court finds that they have not.

(J.A. at 106-07) (footnote added). The court did not render judgment at the time, but held the matter in abeyance and allowed the parties an opportunity to brief the issues surrounding Nibbs's compliance with Rule 12.2(a).

On October 25, 2005, Nibbs filed a Notice of Insanity Defense along with Defendant's Motion to Plead an Insanity Defense requesting the trial

---

[4] Nibbs was represented at the trial by a different attorney from the Office of the Public Defender.

[5] The trial judge inadvertently misstated Rule 12.2(a) of the Federal Rules of Criminal Procedure as "12.2 sub (1)."

court to allow the untimely filing of the notice. In the notice, ostensibly filed pursuant to Rule 12.2(a) of the Federal Rules of Criminal Procedure, Nibbs stated that he "will impose [an] insanity defense with respect to the information filed against him on December 2, 2004 and will make an affirmative defense at the time of trial of insanity." (J.A. at 36.) On October 26, 2005, the Superior Court entered an order denying Nibbs's motion, without prejudice, and rejecting the untimely filed Rule 12.2(a) notice. In its order, the court found that the notice was inappropriately voiced "in the future tense, totally ignoring the fact that the trial already occurred on October 7, 2005." (J.A. at 40.) The court authorized Nibbs to refile his notice, but only if he: (i) had the consent of the People to file an untimely 12.2 notice, and (ii) requested that the notice be filed *nunc pro tunc*. (J.A. at 40.) Nibbs did not refile his notice, and on September 4, 2007, the Superior Court found him guilty on all counts alleged in the Information. On October 10, 2007, the court sentenced Nibbs to two consecutive five-year terms of incarceration and a fine of $5,000.

## III. DISCUSSION

On appeal, Nibbs asserts that the Superior Court erred in ruling that he did not present sufficient notice of his insanity defense and in finding him guilty of the charged offenses despite the insanity defense evidence he presented at trial. We agree with both assertions.

██ The defense of not guilty by reason of insanity is grounded on title 14, section 14(4) of the Virgin Islands Code which provides: "All persons are capable of committing crimes and offenses except . . . persons who are mentally ill and who committed the act charged against them in consequence of such mental illness." As explained by the court in *Gov't of the V.I. v. Webbe*, 821 F.2d 187, 189 (3d Cir. 1987), once the defense is properly put in issue, the ultimate burden of proving the defendant's sanity rests with the government:

> Although a defendant is ordinarily presumed sane, once some evidence of insanity is introduced, the prosecution has the burden of proving sanity beyond a reasonable doubt. Thus, under Virgin Islands law, if there is some evidence that defendant's act was a consequence of mental illness, the government has the burden of proving beyond a reasonable doubt that the offense was not the consequence of a mental illness.

(citations omitted); *see also Gov't of the V.I. v. Knight*, 989 F.2d 619, 626, 28 V.I. 249 (3d Cir. 1993); *Gov't of the V.I. v. Bellott*, 495 F.2d 1393, 1397 (3d Cir. 1974).

 A defendant's obligation to notify the government of his intention to raise an insanity defense is governed by Rule 12.2(a) of the Federal Rules of Criminal Procedure, which lies at the heart of this appeal.[6] Rule 12.2(a) provides:

> A defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk. A defendant who fails to do so cannot rely on an insanity defense. The court may, for good cause, allow the defendant to file the notice late, grant additional trial-preparation time, or make other appropriate orders.

The purpose of Rule 12.2 is explained in the advisory committee's note to the rule:

> Rule 12.2 is designed to require a defendant to give notice prior to trial of his intention (1) to rely upon the defense of insanity or (2) to introduce expert testimony of mental disease or defect on the theory that such mental condition is inconsistent with the mental state required for the offense charged . . . .
>
> The objective is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony. Failure to give advance notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administration of justice.

*See also United States v. Winn*, 577 F.2d 86, 89 (9th Cir. 1978) ("the purpose of [Rule 12.2] is substantive, not formalistic. It is to give the Government

---

[6] The Federal Rules of Criminal Procedure are applicable in the Superior Court of the Virgin Islands to the extent that the Federal Rules are not inconsistent with either procedural rules promulgated under the Virgin Islands Code or the Rules of the Superior Court. *See* Revised Organic Act of 1954, § 21 (c), 48 U.S.C. § 1611 (c), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 150 (1995) (preceding V.I. CODE ANN. tit. 1); SUPER CT. R. 7.

time to prepare to meet a defendant's insanity defense."). As we proceed to analyze whether the actions of defense counsel in the instant case were sufficient to satisfy the mandate of Rule 12.2(a), we remain mindful of the rule's stated purpose and of the United States Supreme Court's admonition that "the Federal Rules of Criminal Procedure 'are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances.' " *Knight*, 989 F.2d at 626 (quoting *Fallen v. United States*, 378 U.S. 139, 142, 84 S. Ct. 1689, 1691, 12 L. Ed. 2d 760 (1964), *abrogated on other grounds by Carlisle v. United States*, 517 U.S. 416, 424, 116 S. Ct. 1460, 1465, 134 L. Ed. 2d 613 (1996)). In *Knight*, the Third Circuit Court of Appeals elaborated:

> No rule should be read literally if such a reading is contrary to its objective. Although literal interpretation is favored, the intention prevails over the letter. Indeed, this court has noted that the surest way to misinterpret a statute or a rule is to follow its literal language without reference to its purpose.

*Id.* (citations, quotation marks and brackets omitted).

 Thus, although a literal interpretation of Rule 12.2(a) is favored, our primary concern in applying the rule in this case is whether Nibbs provided sufficient notice of his intent to assert an insanity defense to give the People "time to prepare to meet the issue." FED. R. CRIM. P. 12.2 advisory committee's note. We conclude that Nibbs's notice accomplished this objective. While Nibbs never filed a formal written notice, he provided the People with a copy of Dr. Lu's psychiatric report six months prior to trial. That report unequivocally concluded that Nibbs's criminal acts were a consequence of his mental illness. Nibbs never concealed his intention to raise an insanity defense based on Dr. Lu's report, and the prosecutor admitted at trial that the People had been advised at the pretrial conference that Nibbs intended to "proceed with a[n] . . . insanity defense to the charges that were filed against him . . . ." (J.A. at 64-65.) Thus, it is clear that at the pretrial conference, approximate five weeks before trial, the People had not only actual notice of Nibbs's intention to assert an insanity defense, but also knew the basis of that defense. Under these circumstances, the People had sufficient time to retain their own expert to address Nibbs's assertion that he was not

guilty of the charged offenses by reason of insanity.[7] Indeed, considering that Nibbs stipulated to the admission of Larry's medical records and that there was no real question but that Nibbs had stabbed his brother Larry, the sole issue to be resolved at trial was Nibbs's insanity defense. Thus, Nibbs's notice to the People, though formally deficient, was substantively sufficient to meet the objectives of Rule 12.2(a).

■ We are not alone in finding that the objectives of a written notice requirement like the one provided by Rule 12.2(a) can be met with less than formal, but substantial, compliance with the notice requirement. For example, in *Ronson v. Comm'r of Corr. of N.Y.*, 604 F.2d 176 (2d Cir. 1979), the court ruled that the trial court erred in prohibiting the defendant from interposing an insanity defense where the defendant had substantially complied with a New York procedural law similar to Rule 12.2(a).[8] When the defendant in *Ronson* first went to trial, the court excluded evidence supporting his insanity defense because he failed to serve notice of his intention to raise the defense in accordance with the New York procedural law. After the jury was unable to reach a verdict, a mistrial was declared. Following the mistrial, defense counsel wrote a letter to the prosecutor, "noting that if a second trial took place, 'the defendant reserves the right to interpose a specification of temporary insanity as a possible defense.' " *Id.* at 178. At retrial, the trial court again excluded evidence supporting an insanity defense, presumably due to a lack of proper notice, and the defendant was convicted of manslaughter.

---

[7] Mindful that Rule 12.2(a) requires that it must be given "within the time provided for the filing of pretrial motions or at such later time as the court may direct," we find that Nibbs' notice was timely under the rule. Although the record does not indicate that the trial court imposed a deadline for filing pretrial motions, the local rules of criminal procedure require that a pretrial conference be held *before* the deadline for filing motions. *See* LRCR 17.1.1(b). Because Nibbs informed the prosecutor of his intent to rely on an insanity defense at the pretrial conference, which under Rule 17.1.1(b) must have preceded the pretrial motions deadline, the notice was timely under Rule 12.2(a).

[8] New York Criminal Procedure Law § 250.10 provided:

Evidence of mental disease or defect of the defendant excluding criminal responsibility pursuant to section 30.05 of the penal law is not admissible upon a trial unless the defendant serves upon the people and files with the court a written notice of his intention to rely upon such defense. Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment. In the interest of justice and for good cause shown, however, the court may permit such service and filing to be made at any later time prior to the close of the evidence.

In habeas corpus proceedings, the Court of Appeals for the Second Circuit found that the trial court's preclusion of the insanity defense violated the defendant's Sixth Amendment rights under the Constitution that guarantees the right of compulsory process to call witnesses in his favor. *Id.* at 178-79. The court reasoned that although the New York notice requirement served a legitimate purpose, "maximum 'truth gathering,' rather than arbitrary limitation, is the favored goal." *Id.* at 178 (citing *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973); *Chambers v. Mississippi*, 410 U.S. 284, 296 n. 8, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). The court found that while the defendant never filed a formal notice of his intention to raise an insanity defense, he never hid the issue from the prosecution and "gave actual notice in all but precise form." *Id.* at 179. Thus, while the notice requirements at issue in *Ronson* served the legitimate purpose of "increase[ing] the flow of information to both sides . . . thus enhancing the fairness of the adversary system[,] . . . defense counsel's substantial compliance with the notice requirements removed any element of surprise from the insanity defense, and thus was fair in putting the state on notice of its existence." *Id.* (citation and internal quotation marks omitted).

The Court of Appeals for the Eleventh Circuit reached a similar conclusion in *Cameron. See* 907 F.2d at 1051. In *Cameron*, the trial court precluded the defendant from raising an insanity defense on the ground that she did not provide notice under Rule 12.2(a). The appellate court disagreed, finding that the defendant had filed a motion, in limine, for a ruling on the admissibility of diminished capacity evidence and in that motion stated that she intended to rely upon an insanity defense at trial. Thus, although the defendant did not file a separate, formal written notice under Rule 12.2(a), the appeals court ruled that, under the circumstances of that case the statements of her intent in the motion in limine "satisfie[d] the substantive notice requirements of Rule 12.2(a)." *Id.* at 1058.

In *United States v. Fazzini*, 871 F.2d 635 (7th Cir. 1989), the Court of Appeals for the Seventh Circuit seemingly approved of the trial court's finding that verbal notice provided at a pretrial conference was sufficient notice under Rule 12.2(a). The defendant in *Fazinni* "attempted to meet the requirements of Rule 12.2(a) by at least twice notifying the government that the 'defense may rely upon a defense based upon mental condition.' " *Id.* at 640. Notwithstanding the defendant's actions, the government's attorney complained at a pretrial conference that "the

defendant had not given the government notice of the specific defenses he planned to raise at trial." *Id.* The defendant responded that "he planned to defend on the basis of unconsciousness caused by chronic alcoholism. The district judge then seemed to find that the defendant had met the notice requirement when she stated to the government's attorney: 'So now you have notice . . . of the specifics.' " *Id.* Based on the judge's statement that the government had notice of the specifics, the court of appeals disagreed with the judge's later conclusion that the notice was inadequate. *Id.* And finally, in *United States v. Hearst*, 412 F. Supp. 863, 870 (D.C.Cal. 1975) the District Court found that the defendant complied with the notice requirements of Rule 12.2(b) "when defense counsel stated, [at oral arguments,] in relatively clear fashion that the mental condition of the defendant at the time of the offense would be at issue."

Although each of the cases discussed above were decided based on the unique circumstances of the specific case, they all share a common denominator: the court excused the defendant's failure to strictly comply with the applicable formal notice requirement. *But see Gov't of the V.I. v. Charleswell*, 115 F.3d 171, 176, 36 V.I. 383 (3d Cir. 1997) (affirming trial court's exclusion of psychiatric evidence under Rule 12.2(b) because defense counsel merely "raised the possibility of a defense that he lacked the mental capacity to form the requisite *mens rea*," and because no notice was given under the rule, the government was unable to secure a mental examination of the defendant by its own expert); *Cox*, 826 F.2d at 1521 ("noncompliance with the plain language of Rule 12.2(a), [renders reliance on] the ultimate purpose of the Rule . . . unavailing.").

The instant case too involves unique circumstances under which the defendant failed to strictly comply with the notice requirement found in Rule 12.2(a). But it is clear that approximately six months before trial Nibbs provided the People with Dr. Lu's report which concluded that Nibbs's criminal acts were a consequence of his mental disorder. It is also undisputed that five weeks before trial Nibbs's attorney notified the People, in no uncertain terms, that he intended to raise an insanity defense at trial. Moreover, the People stipulated to the admission of Dr. Lu's report into evidence. Thus, it is patently clear that the People not only had sufficient notice of Nibbs's insanity defense, but also that they agreed to the admission of expert evidence supporting the defense. Under these circumstances, it is inconceivable that the People did not have sufficient notice to prepare to meet the issue at trial. Accordingly, we conclude that

the trial court abused its discretion in rejecting Nibbs's insanity defense based on his failure to comply with the formal notice requirements of Rule 12.2(a). To conclude otherwise, we believe, would elevate form over substance in contravention of the well-reasoned teachings in *Knight*.

 Moreover, even if we were to find that Nibbs's failure to provide formal notice of his insanity defense under Rule 12.2(a) was a proper ground for the trial court to reject the defense, the People's stipulation into evidence of Dr. Lu's psychiatric report raises the question of whether the prosecutor waived any purported deficiency in the notice provided by Nibbs under the rule. *See, e.g., United States v. Technic Servs., Inc.,* 314 F.3d 1031, 1045 (9th Cir. 2002) ("'Stipulations freely and voluntarily entered into in criminal trials are as binding and enforceable as those entered into in civil actions.' Thus, a defendant who has stipulated to the admission of evidence cannot later complain about its admissibility." (quoting *United States v. Gwaltney,* 790 F.2d 1378, 1386 (9th Cir. 1986))); *Pimentel v. Roundup Co.,* 100 Wn.2d 39, 666 P.2d 888, 894 (1983) (ruling that the defendant had waived the protection of a procedural rule concerning the use an expert's deposition when the defendant had stipulated to use of the expert's deposition for all purposes allowed by the civil rules, and the trial court's exclusion of the expert's deposition was an abuse of discretion.); *See also* 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., *Federal Practice and Procedure* § 5194 (1978) (discussing stipulation that "certain evidence will be admissible[] despite a general rule of exclusion" and quoting WIGMORE, CODE OF EVIDENCE, p. 542 (3d ed. 1942), for proposition that "[a] requirement for evidence ceases to apply where the opponent, by express statement made for the purpose of trial, has . . . waived the prohibition or limited conditions of a specific rule of evidence.").

 Dr. Lu's report was undeniably relevant, and we cannot discern any reason why the fact finder should not have considered it when both parties agreed that it was to be admitted into evidence. *See id.* (noting that "question of enforcing evidentiary stipulations is one that involves the issue of 'admissibility' of evidence" and that "general policy of the Civil and Criminal Rules is to encourage such stipulations"). Indeed, if the prosecutor believed that a lack of proper notice from Nibbs left the People ill-prepared to meet evidence of Nibbs's insanity defense at trial, then a stipulation which effectively waived the rule of non-admissibility seems a curious tactic to oppose the defense. On the

contrary, if the People wanted the trial court to prevent Nibbs from relying on an insanity defense on the ground that he did not provide proper notice under Rule 12.2(a), then the prosecutor should have objected to the introduction of Dr. Lu's report and Larry's testimony concerning Nibbs's history of psychiatric problems. Without further belaboring the point, by knowingly stipulating to the admission of Dr. Lu's report, the People waived any objections to the admission of the report. *See Technic Services*, 314 F.3d at 1045.

 Having determined that the trial court should have considered Nibbs's insanity defense, we easily conclude that the evidence presented at trial demanded a finding that Nibbs was not guilty by reason of insanity. It does not matter whether the People proved the elements of the charged offenses beyond a reasonable doubt. The defense of not guilty by reason of insanity is essentially an affirmative defense.[9] *See generally* 21 AM. JUR. 2D *Criminal Law* § 45 (West Supp. 2008) ("Insanity, where it is recognized as a defense, is an affirmative defense to a prosecution for crime, which may prevail despite successful proof of all of the elements of a crime."). As such, a defendant pleads insanity to avoid legal responsibility for acts that would otherwise be criminal. *See* V.I. CODE ANN. tit. 14, § 14(4) (1996). Thus, even where the People can prove all the essential elements of a criminal act, a defendant who is mentally ill and committed the act in consequence of such mental illness is absolved of responsibility for it. *See id.*; *see also United States v. Lawson*, 459 F. Supp. 2d 1192, 1195 (M.D. Ala. 2006) (the insanity defense "presupposes that the government can prove the elements of the offense beyond a reasonable doubt, but it then affirmatively excuses the defendant's otherwise criminal behavior."); *In re Certified Question: Duffy v. Foltz*, 425 Mich. 457, 390 N.W.2d 620, 623 (1986) (recognizing that insanity is an affirmative defense " 'pled to avoid responsibility for criminal

---

[9] By characterizing insanity as an affirmative defense, we do not suggest that a defendant has the burden of proving his insanity. Indeed, as is explained below, once some evidence of insanity is produced, the People have the burden of proving, beyond a reasonable doubt, that the charged offense was not committed as a consequence of the defendant's mental illness. *See Webbe*, 821 F.2d at 189; *Bellott*, 495 F.2d at 1397. *Compare United States v. Pohlot*, 827 F.2d 889, 885-86 (recognizing that in federal criminal prosecutions, the Insanity Defense Reform Act of 1984, which characterizes insanity as an affirmative defense, requires a defendant to prove his insanity by " 'clear and convincing evidence.' " (quoting 18 U.S.C. § 17(b))).

acts . . . .' " (citation omitted)). Furthermore, under Virgin Islands law, once some evidence of insanity is introduced, the People have "the burden of proving beyond a reasonable doubt that the offense was not the consequence of a mental illness." *Webbe*, 821 F.2d at 189.

██ In this case, the People wholly failed to meet this burden even though they stipulated to evidence which explicitly showed that Nibbs's criminal acts were a consequence of his mental disorder. While the People's evidence showed that Nibbs committed the criminal acts in question, the People did not present *any* evidence bearing on Nibbs's sanity. In the absence of evidence establishing Nibbs's sanity beyond a reasonable doubt, the Superior Court, sitting as the trier of fact, should have found him not guilty by reason of his mental condition. Accordingly, this Court will reverse Nibbs's Judgment of Conviction.

## IV. CONCLUSION

It is the rare case that presents so few controversies as the instant appeal. It is uncontested that Nibbs committed the acts with which he was charged. It is also clear that the People's attorney, defense counsel, the trial court judge, Dr. Lu, and the sole witness at trial, all recognized that Nibbs has a history of, and continues to suffer from, a mental disorder. It seemed obvious that Nibbs required psychiatric care, not incarceration, and the trial court judge evidently struggled with the issue of whether to recognize Nibbs's insanity defense. In the end, the trial judge concluded that Rule 12.2(a) prohibited her from considering the defense.

For the reasons discussed above, we conclude that the trial court's formalistic application of Rule 12.2(a), under the unique circumstances of this case, was contrary to the rule's objective. Specifically, the People undeniably knew about the specifics of Nibbs's insanity defense when they were provided with copies of Dr. Lu's report. The People acknowledged that five weeks before trial Nibbs informed them that he would be relying on the defense. The People stipulated to the admission of Dr. Lu's psychiatric evaluation, which unequivocally concluded that Nibbs's criminal acts were a consequence of his mental disorder. The People clearly could have opposed Nibbs's insanity defense, but chose not to. Under these circumstances, the Superior Court should have considered Nibbs's insanity defense. Inasmuch as Nibbs presented evidence establishing that he committed the charged criminal acts in consequence of his mental illness, and the People failed to meet their

burden of rebutting that evidence, Nibbs's conviction is reversed. This matter will be remanded with direction that the trial court enter judgment finding Nibbs not guilty by reason of insanity and that the court take further action consistent with that judgment.