**IVAN PETRIC, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2013-0067

Supreme Court of the Virgin Islands

October 16, 2014

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(October 16, 2014)

CABRET, *Associate Justice.* Ivan Petric appeals his convictions for first-degree murder, unauthorized possession of a firearm during the commission of a crime of violence, first-degree animal abuse, and unauthorized possession of ammunition. For the reasons that follow, we reverse Petric's convictions and remand for the Superior Court to enter a judgment of acquittal for unauthorized possession of ammunition and a judgment of not guilty by reason of insanity on the remaining charges.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 21, 2006, Officers Richard White, Terrence Aaron, George Felix, and Sergeant Jonathan Hitesman were dispatched to the La Vallee neighborhood on St. Croix. When they arrived, neighbors told the officers that they heard gunshots coming from the Petric family home a day or two before and that no one had seen the Petric family for several days. As the officers approached the Petric home, they discovered the body of Petric's father, Ivan Petric, Sr., face down in the bush. After entering the home through the upstairs window, the officers found the bodies of Nancy Kuiper — Petric, Sr.'s girlfriend — Petric's brother, Zivko Petric, and the family dog. Downstairs, the officers located and arrested Petric who was in possession of at least one .357 magnum revolver.[1]

On July 27, 2007, the People charged Petric with three counts of first-degree murder, three counts of unauthorized possession of a firearm during the commission of a crime of violence, one count of first-degree

---

[1] It is unclear from the trial testimony whether Petric was found in possession of one gun or two.

animal abuse, and one count of unauthorized possession of ammunition. On April 4, 2009, by order of the Superior Court, Dr. Derek V. Spencer, Chief of Psychiatry at Roy Schneider Hospital on St. Thomas, evaluated Petric. In his report, Dr. Spencer determined that while Petric was capable of assisting in his defense, he likely suffered from an undiagnosed "psychotic disorder." On December 22, 2011, Dr. Spencer updated his report and determined that on the day of the murders, Petric was in a "delusional state" such that Petric "thought that his actions . . . [were] correct" and "believed that his act was in self-defense." On June 20, 2012, Petric filed a notice of intent to assert an insanity defense.

Petric's four-day trial began on September 25, 2012. The People's first witnesses were the responding officers. They described the discovery of the bodies, the crime scene, and Petric's arrest. In particular, the officers testified to finding a pair of bloody jeans soaking in a bucket of water and cleaning detergent as well as two packed suitcases in Petric's room. The officers also stated that the phone cord had been pulled from the wall and that each body was covered. The People then called Detective Karen Stout, who testified that a search of the firearm registry revealed that Petric did not have a license to possess a firearm in the Virgin Islands at the time of the shooting. Next, the People called forensic firearm examiner Brandon Giroux, who testified that the bullets recovered from the bodies were fired from the guns in Petric's possession when he was arrested. In addition, forensic examiner Jerrilyn Conway testified that Petric's jeans had Zivko's blood on them and that Petric's shoes had his father's and Zivko's blood on them.

Before the People rested, the Superior Court allowed Petric to present the testimony of Dr. Spencer and Karen Petric in order to accommodate their schedules.[2] Dr. Spencer testified that while Petric was capable of assisting in his own defense, it was apparent that Petric had been suffering from "an untreated psychiatric disorder" for years and that his "actions on [the day of the murders] were driven by delusional beliefs." On cross-examination, the People tried to discredit Dr. Spencer's testimony

---

[2] See 5 V.I.C. § 731 ("The order of proof shall be regulated by the sound discretion of the court."); FED. R. EVID. 611(a) (the "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence"); Thomas v. People, 60 V.I. 183, 188 n.8 (V.I. 2013) (declining to decide whether section 731 was implicitly repealed by Act No. 7161 because the language of section 731 is "virtually identical" to Federal Rule of Evidence 611).

that Petric suffered from a mental illness and to demonstrate that Petric's actions on the day of the murders were inconsistent with an individual suffering from a mental illness. Petric then called his mother, Karen Petric, who testified that her family has a history of mental illness, including paranoid schizophrenia, and that she suspected her son was suffering from a similar illness, particularly after he was hospitalized at age fifteen for six weeks due to a psychotic episode. Karen also stated that in 2000, Petric informed her that he was "God" and that people were following him and trying to kill him. She further testified that Petric's father did not believe in psychiatric treatment and would not seek psychiatric care for him.

The People then resumed its case-in-chief, presenting the testimony of medical examiner Dr. D'Michelle Dupre, who performed the autopsies of Petric, Sr., Kuiper, Zivko, and the family dog. According to Dr. Dupre's testimony, all the victims were killed by multiple gunshots fired at close range, except the dog, who was killed by one gunshot to the head. In addition, Dr. Dupre testified that the drying of the bloodstains suggested Kuiper may have been killed earlier than Zivko, but that ultimately both were killed "within the same general time range."

After the People rested, Petric moved for a judgment of acquittal. In his oral motion, Petric argued that the People failed to satisfy its burden of proving beyond a reasonable doubt that he was sane at the time of the murders. In response, the People argued that circumstantial evidence suggested Petric was sane at the time of the offenses. The Superior Court denied Petric's motion, and Petric rested. The same day, the jury returned a guilty verdict on all counts.

In a September 7, 2013 judgment and commitment, the Superior Court sentenced Petric to three consecutive life sentences without the possibility of parole for the three murders and three consecutive 20-year sentences for unauthorized possession of a firearm during these crimes. The Superior Court also sentenced Petric to a consecutive term of two years for first-degree animal abuse and a concurrent term of seven years for unauthorized possession of ammunition. Petric filed a timely notice of appeal on August 27, 2013.[3]

---

[3] Supreme Court Rule 5(b)(1) provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as

## II. JURISDICTION

This Court has jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The Superior Court's September 7, 2013 judgment and commitment is a final judgment over which we may exercise jurisdiction. *Cascen v. People*, 60 V.I. 392, 400 (V.I. 2014); *see also Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

## III. DISCUSSION

██ Petric, as one of several arguments raised on appeal, argues that the Superior Court should have granted his motion for a judgment of acquittal because the People failed to prove beyond a reasonable doubt that Petric was sane at the time of the offenses. Because we agree, we do not reach his other arguments.[4] In addressing the sufficiency of the evidence, "we must view the evidence in the light most favorable to the People, and affirm the conviction[s] if 'any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.' " *George v. People*, 59 V.I. 368, 384 (V.I. 2013) (quoting *Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011)).

### A. The Insanity Defense in the Virgin Islands

██ Because the entire trial in this case was conducted using the wrong test for insanity, we must first clarify the insanity defense in the Virgin

---

filed on the date of and after the entry of judgment." Therefore, even though Petric filed his notice of appeal before the Superior Court entered its judgment and commitment, it was timely. *Tyson v. People*, 59 V.I. 391, 399 n.5 (V.I. 2013) (Supreme Court Rule 5(b)(1) renders timely an otherwise prematurely filed notice of appeal).

[4] In particular, Petric argues that the Superior Court erred in giving its final jury instructions because the court inappropriately shifted the burden of proof to Petric and failed to instruct the jury that a verdict of not guilty by reason of insanity would not result in Petric's release from custody. While we do not need to address these arguments since we ultimately reverse for insufficient evidence, we note that by instructing the jury that Petric was required to introduce evidence that he committed the crimes "as a result of [his] *severe* mental disease or defect," the Superior Court impermissibly altered the burden of proof by requiring Petric to introduce evidence beyond that required by law. *Nibbs v. People*, 52 V.I. 276, 292 (V.I. 2009) (defendant need only introduce some evidence of mental illness, and need not demonstrate a "severe" mental disease or defect).

Islands before addressing Petric's sufficiency argument. At trial both the Superior Court and the parties labored under the mistaken assumption that the applicable test for insanity was whether the defendant had "sufficient reason to know right from wrong" at the time the offenses were committed.[5] This test, commonly referred to as the *M'Naghten* test, exempts individuals from criminal liability where at the time of committing the offenses the defendant "was labouring under such a defect of reason . . . as not to know the nature and quality of the act he was doing; or if he did know it, that he did not know he was doing what was wrong." *M'Naghten's Case*, 8 Eng. Rep. 718 (H.L. 1843). However, the Virgin Islands Legislature explicitly discarded the *M'Naghten* test in 1957. 14 V.I.C. § 14(4) (1957 revision note); *see also Gov't of the V.I. v. Fredericks*, 578 F.2d 927, 938, 15 V.I. 558 (3d Cir. 1978) (Adams, J., dissenting) (examining the development of the insanity defense in the Virgin Islands). In its place, the Legislature enacted section 14(4) of title 14 of the Virgin Islands Code, which provides that "[a]ll persons are capable of committing crimes and offenses except . . . persons who are mentally ill and who committed the act charged against them in consequence of such mental illness." The language of section 14(4) parallels the "product test" for insanity set out by the United States Court of Appeals for the District of Columbia Circuit in 1954. *Durham v. United States*, 214 F.2d 862, 874-75, 94 U.S. App. D.C. 228 (D.C. Cir. 1954) ("[A]n accused is not criminally responsible if his unlawful act was the product of mental disease or mental defect."), *abrogated by United States v. Brawner*, 471 F.2d 969, 981-82, 153 U.S. App. D.C. 1 (D.C. Cir. 1972); *see also Fredericks*, 578 F.2d at 940 (Adams, J., dissenting) (section 14(4) "is in essence a codification of the product test which had recently emerged in *Durham*").

---

[5] In accordance with this belief, the parties referred to the incorrect test in their opening and closing arguments, and discussed the test during sidebar exchanges with the trial judge. Moreover, the Superior Court provided the following instructions on the test:

> A defendant who has a mental illness, and as a result of that mental illness cannot tell right from wrong, is absolved of responsibility for it.
>
> . . . .
>
> The test is whether the defendant has sufficient reason to know right from wrong. If you find that at the time of the crime the accused was laboring under such a defect of reason as to not know the nature and quality of the act he was committing, or that the act was wrong, then the defendant was insane and is entitled to acquittal.

 The People argues that the Superior Court did not err in utilizing a test other than that codified in section 14(4) because the United States Court of Appeals for the Third Circuit — sitting in its former capacity as the *de facto* court of last resort for the · Virgin Islands[6] — held in *Fredericks* that it was not error for a trial court applying Virgin Islands law to instruct the jury on the Third Circuit's test for insanity developed in *United States v. Currens*, 290 F.2d 751 (3d Cir. 1961). Under the *Currens* test, a jury must find that "at the time of committing the prohibited act the defendant, as a result of a mental disease or defect, lacked substantial capacity to conform his conduct to the requirements of the law which he is alleged to have violated." *Id.* at 774.[7] But since the Legislature has statutorily adopted the "product test" for insanity in the Virgin Islands, specifically rejecting other formulations, we cannot endorse the Third Circuit's holding in *Fredericks*. *See Fredericks*, 578 F.2d at 943 (Adams, J., dissenting) (the Third Circuit "[is] not free to set aside the standard which the Virgin Islands Legislature has chosen"); *In re Reynolds*, 60 V.I. 330, 337 n.7 (V.I. 2013) (this Court "will not rewrite a statute"); *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013) ("If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." (quoting *Brady v. Gov't of the V.I.*, 57 V.I. 433, 441 (V.I. 2012))). Accordingly, section 14(4) remains the sole test for insanity applicable in the Virgin Islands, to the exclusion of both the *M'Naghten* test and the Third Circuit's *Currens* test.

---

[6] The Third Circuit served as the *de facto* court of last resort in the Virgin Islands before the establishment of this Court. *Garcia v. Garcia*, 59 V.I. 758, 776 (V.I. 2013). And while decisions of the Third Circuit interpreting local law during the period in which it served as the *de facto* court of last resort for the Virgin Islands are "entitled to great respect," this Court may depart from the Third Circuit's construction of a local statute and "conduct our own independent analysis and adopt a different interpretation." *Defoe v. Phillip*, 56 V.I. 109, 120 (V.I. 2012), *aff'd*, 702 F.3d 735, 742-43 (3d Cir. 2012) (recognizing that the Supreme Court of the Virgin Islands has the authority to abrogate Third Circuit precedent on local law).

[7] The *Currens* "capacity to conform" test was drawn in part from the test proposed by the American Law Institute in its Model Penal Code, 290 F.2d at 774 n.32, and was used by the Third Circuit until Congress passed the Insanity Defense Reform Act of 1984, which provided a statutory formulation of the federal insanity defense. 18 U.S.C. § 17 ("[A]t the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts."); *see also United States v. McBroom*, 124 F.3d 533, 545 (3d Cir. 1997) (discussing the development of the *Currens* test and its abrogation by 18 U.S.C. § 17).

## B. Sufficiency of the Evidence

As this Court explained in *Nibbs v. People*, 52 V.I. 276, 284 (V.I. 2009), to raise the insanity defense a defendant need only introduce "some evidence" tending to show that he was "mentally ill and . . . committed the act charged against [him] in consequence of such mental illness." Once the defendant introduces "some evidence" of mental illness, the defendant's sanity at the time of the offense becomes an element of the crime, which, like all other elements of the crime, must be proven by the People beyond a reasonable doubt. *See Davis v. United States*, 160 U.S. 469, 488, 16 S. Ct. 353, 40 L. Ed. 499 (1895); *Wright v. United States*, 250 F.2d 4, 7, 102 U.S. App. D.C. 36 (D.C. Cir. 1957) (once the defense of insanity is properly raised, sanity becomes an element of the crime).

To satisfy the "some evidence" test, the defense need only introduce "a slight quantum of evidence." *United States v. McCracken*, 488 F.2d 406, 410 (5th Cir. 1974); *see also Blake v. United States*, 407 F.2d 908, 911 (5th Cir. 1969) (en banc) (defining "some evidence" as "only slight evidence"), *superseded by statute as recognized in United States v. Long*, 562 F.3d 325, 332 n.8 (5th Cir. 2009); *Smith v. State*, 614 P.2d 300, 303 (Alaska 1980) (the "some evidence" test requires that there be more than a scintilla but less than that which would compel reasonable doubt as a matter of law). In this case, Petric sought to raise the insanity defense by introducing Dr. Spencer's testimony that Petric suffered from a "psychotic disorder" and that his actions in November 2006 were driven by delusional beliefs. In addition, Petric's mother testified that the family had a history of mental illness and described in detail Petric's personal struggles with mental illness. Combined, the testimony of Dr. Spencer and Petric's mother clearly amounted to "some evidence" sufficient to raise the insanity defense and place the burden of proving Petric's sanity on the People. *See Brock v. United States*, 387 F.2d 254, 256-57 (5th Cir. 1967) (testimony of a medical expert as to defendant's insanity constituted "some evidence" sufficient to raise the insanity defense).

Although not required, once the defense introduces "some evidence" of mental illness, the first and most obvious way the People can satisfy its burden of proving the defendant's sanity at the time of the offense is by introducing its own expert medical testimony to challenge the defense expert's medical conclusions. *See United States v.*

*Shackelford*, 494 F.2d 67, 70 (9th Cir. 1974) ("No case . . . holds, as a matter of law, that the Government must meet defendant's psychiatric testimony with psychiatric testimony of its own."); *Gov't of the V.I. v. Downey*, 396 F. Supp. 349, 355, 12 V.I. 39 (D.V.I. 1975) (the fact that the government failed to produce expert testimony to substantiate its position of sanity does not mean that it has failed to meet its burden); *but see Mims v. United States*, 375 F.2d 135, 146 (5th Cir. 1967) ("[T]he prosecution usually runs some risk of discharging its burden of proof when it attempts to rebut testimony of experts on the sanity question without offering like testimony."); *United States v. Albright*, 388 F.2d 719, 725 (4th Cir. 1968) (introducing a verifying psychiatric examination is "perhaps . . . the most trustworthy means of attempting to meet [the] burden" of proving the accused's sanity). In this case, the People offered no medical testimony that Petric was sane at the time of the murders. Instead, the People sought to discredit Dr. Spencer's testimony that Petric's actions on the day of the murders were driven by delusional beliefs stemming from an undiagnosed "psychotic disorder." In particular, the People challenged Dr. Spencer's ability to conclude that Petric was driven by delusional beliefs by pointing out that Petric was not evaluated until approximately three years after the murders. However, merely pointing out the delay between the acts committed and the psychiatric evaluation does nothing to demonstrate that Petric was sane at the time of the commission of the murders, nor does it undermine any of the bases upon which Dr. Spencer reached his conclusion that Petric's actions at the time were a consequence of his delusional beliefs. *See Carter v. United States*, 252 F.2d 608, 617, 102 U.S. App. D.C. 227 (D.C. Cir. 1957) ("The chief value of an expert's testimony [on insanity] rests upon the material from which his opinion is fashioned and the reasoning by which he progresses from his material to his conclusion."). Accordingly, the People's effort to discredit Dr. Spencer's conclusions based on the elapsed time between the commission of the offenses and the psychiatric evaluation, without more, was insufficient to prove beyond a reasonable doubt that Petric committed the murders while sane.

In addition to the People's attempt to discredit Dr. Spencer's conclusion that Petric actions were a consequence of his mental illness, the People presented the lay testimony of the arresting officers as evidence of Petric's mental state at the time of arrest. However, before a non-expert witness may testify to the sanity of the defendant, the party

offering the testimony must show a familiarity with the defendant to clearly indicate that the testimony will be of value in determining the defendant's sanity, and the conclusion must be based on the witness's testimony as to specific instances of behavior or conduct near the time of the offense. *See United States v. Anthony*, 944 F.2d 780, 782-83 (10th Cir. 1991) (quoting *McKenzie v. United States*, 266 F.2d 524, 526-27 (10th Cir. 1959)); *see also United States v. Milne*, 487 F.2d 1232, 1235 (5th Cir. 1973) (recognizing the rule accepted in most jurisdictions that lay opinion as to a person's sanity is admissible if the witness is sufficiently acquainted with the person involved and has observed his conduct near the time of the offense). The primary testimony of the arresting officers bearing on Petric's mental condition at the time of the murders was only that at the time of his arrest — days after the commission of the crimes — Petric "appeared to be alert" and capable of responding to questions. Significantly, none of the officers testified to having any prior familiarity with Petric, nor were the officers capable of testifying to Petric's mental condition before or at the time of the crimes. *See McKenzie*, 266 F.2d at 526-27 (evidence of sanity was insufficient where the prosecution relied only on lay testimony of the arresting officers, who were unfamiliar with the defendant and observed nothing unusual or abnormal about the defendant after the alleged crime). Accordingly, the testimony of the arresting officers indicating that Petric was alert and responsive several days after the murders provided no evidence from which a reasonable juror could conclude beyond a reasonable doubt that Petric was sane at the time of the murders.

 ██ The People also attempted to use the observations of the arresting officers at the time of Petric's arrest as circumstantial evidence that Petric was sane at the time of the murders. In particular, the People relied on the testimony of Officer Felix that when Petric was arrested, police discovered a pair of bloodstained jeans soaking in a wash bucket and two packed suitcases in Petric's room. The officers also observed that the phone cord had been pulled from the wall and that the bodies had been covered up. However, the mere fact that it appeared as though Petric may have been seeking to conceal his actions — by cleaning his clothes, covering the bodies, pulling the phone cord from the wall, and packing suitcases — provides no insight into whether Petric was sane when he committed the murders. Indeed, in order for circumstantial evidence that Petric made efforts to conceal his actions *after* the murders to be used as

evidence of his sanity *at the time of* the murders, the jury would first have to infer that Petric performed the acts of concealment, then that he did so while sane, and finally — based on these two inferences — that he was sane while committing the murders. *See People v. Clarke*, 55 V.I. 473, 482 (V.I. 2011) (a verdict cannot rest on the "attenuated piling of inference on inference") (quoting *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)); *Hughes v. People*, 59 V.I. 1015, 1021-22 (V.I. 2013) ("[S]peculation is not a substitute for evidence."). And when there is a complete absence of evidence to show that "the defendant was sane at the critical time, namely, the period when . . . the killing occurred," the People has failed to produce sufficient evidence to support a finding of sanity. *See Buatte v. United States*, 330 F.2d 342, 347 (9th Cir. 1964) (finding insufficient evidence where the prosecution presented no expert medical testimony and lay witnesses were unable to testify to the defendant's mental condition at the time of the offense).

Requiring the People to produce evidence bearing on a defendant's sanity during the "critical time period" — either immediately before or during the commission of the offense — is particularly important in cases such as this, where the defendant's medical expert testified that the defendant was in a "delusional state" before and during the murders. *See United States v. Collier*, 453 F.2d 1173, 1177 (5th Cir. 1972) (lay testimony of government witnesses who could only testify to observing the conduct of the defendant immediately after the killing — "when he had acted out his delusional pattern and was calmed" — was insufficient to prove the defendant's sanity beyond a reasonable doubt, particularly where the government provided no expert testimony on the defendant's sanity). Taken together, the People's cross-examination of Dr. Spencer, coupled with the lay testimony of the arresting officers, even when viewed in the light most favorable to the People, was simply insufficient to prove beyond a reasonable doubt that Petric was sane at the time of the offenses.

 We turn now to the appropriate remedy. Although this Court has typically held that " 'a judgment of acquittal is the appropriate remedy when the evidence is not sufficient to sustain a conviction,' " *Farrell v. People*, 54 V.I. 600, 619 (V.I. 2011) (quoting *Gilbert v. People*, 52 V.I. 350, 364 (V.I. 2009)), where the People fails to carry its burden of proving beyond a reasonable doubt that the defendant was sane at the time of the offense, the appropriate remedy is to remand with instructions to enter a judgment of not guilty by reason of insanity. *Nibbs*, 52 V.I. at 292-93; *see*

413

*Williams v. United States*, 312 F.2d 862, 865 & n.13, 114 U.S. App. D.C. 135 (D.C. Cir. 1962) (when insanity is at issue and the evidence failed to establish that the offenses charged were not the product of the defendant's mental illness, the defendant is entitled to a directed verdict of not guilty by reason of insanity); *People v. Laeke*, 2012 CO 13, 271 P.3d 1111, 1116, (2012) (a judgment of not guilty by reason of insanity does not constitute a conviction; rather, it operates as an acquittal of the charged offense).[8] Accordingly, due to the absence of sufficient evidence permitting the jury to find beyond a reasonable doubt that Petric was sane at the time of the offenses, we remand this case and direct the Superior Court to enter a judgment of not guilty by reason of insanity on all of Petric's convictions except for unauthorized possession of ammunition.

With regard to that conviction, not only did the People fail to prove his sanity at the time of this offense, but the People also failed to prove that he committed the essential elements of that crime. The People concedes in its brief that it "did not prove that Petric committed this offense" and that Petric's "conviction for unauthorized possession of ammunition should be reversed." Although the parties may not stipulate to the law, *Rohn v. People*, 57 V.I. 637, 643 (V.I. 2012), we agree that the evidence here was insufficient. As this Court has previously explained, because 14 V.I.C. § 2256(a) (as it existed at the time of Petric's offense) "generally criminalized possession of ammunition 'unless authorized by law' but provided no means to obtain such authorization," the People could not have proven that Petric committed this offense. *Nicholas v. People*, 56 V.I. 718, 730 (V.I. 2012) (citing *Brown v. People*, 55 V.I. 496, 500-01 (V.I. 2011)). Accordingly, on remand, the Superior Court must enter a judgment of acquittal for unauthorized possession of ammunition.

## IV. CONCLUSION

The evidence was insufficient to support Petric's convictions for first-degree murder, unauthorized possession of a firearm, and first-degree

---

[8] While we acknowledge that some courts have remanded for a new trial when the evidence of sanity was insufficient, *see Wright*, 250 F.2d at 10; *Fielding v. United States*, 251 F.2d 878, 880-81, 102 U.S. App. D.C. 167 (D.C. Cir. 1957), these cases preceded the United States Supreme Court's holding that retrial under these circumstances would violate double jeopardy by giving the People an impermissible "second bite at the apple." *Burks v. United States*, 437 U.S. 1, 17, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

animal abuse because the People failed to carry its burden and introduce sufficient evidence to permit a rational jury to conclude beyond a reasonable doubt that Petric was sane at the time of the offenses. The People also failed to introduce sufficient evidence to support Petric's conviction for unauthorized possession of ammunition. Therefore, we reverse Petric's convictions and remand to the Superior Court to enter a judgment of acquittal for unauthorized possession of ammunition. Further, we direct the Superior Court to enter judgment finding Petric not guilty by reason of insanity on the remaining charges and take further action consistent with that judgment.