IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

March 09, 2026 01:06 PM
SCT-Civ-2025-0034
DALILA E. PATTON, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

|  |  |  |
|---|---|---|
| **GABRIELLE FRONGILLO,** | ) | **S. Ct. Civ. No. 2025-0034** |
| Appellant/Judgment Debtor, | ) | Re: Super. Ct. Civ. No. 343/2017 (STX) |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **BANK OF ST. CROIX, INC.,** | ) |  |
| Appellee/Judgment Creditor. | ) |  |
|  | ) |  |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Debra S. Watlington

Considered: November 7, 2025
Filed: March 9, 2026

Cite as: 2026 VI 3

**BEFORE:**     **RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **HAROLD W.L. WILLOCKS**, Associate Justice.

**APPEARANCES:**

**Gabrielle Frongillo**
St. Croix, U.S.V.I.
        *Pro Se*,

**Samuel T. Grey, Esq.**
Grey Law, P.C.
St. Croix, U.S.V.I.
        *Attorney for Appellee*.

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1     Gabrielle Frongillo appeals a *nunc pro tunc* entry of the Superior Court, which reduced the period of time afforded by statute in which she could redeem foreclosed property after a marshal's sale. For the reasons that follow, we reverse and remand.

*Frongillo v. Bank of St. Croix, Inc.*          2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 2 of 12

# I. BACKGROUND

¶ 2      This is an action to foreclose a mortgage. According to the brief record, in 2017 the Bank of St. Croix sued Gabrielle Frongillo, John Frongillo, and 40 King Place, LLC (the "judgment debtors"[1]), to foreclose on Plot No. 40-A & B (5,466 square feet) of King Street, Town of Christiansted, St. Croix ("the Property"). The Bank obtained a default judgment. During post-judgment proceedings, approximately five years elapsed with little activity on the docket.[2] Then, on April 4, 2023, the Bank—as judgment creditor—obtained a writ of execution and attached the Property. The Property was to be auctioned in a marshal's sale, and the Bank provided notice of the sale by publication. The sale was held on October 4, 2024, and the Property was sold to Kisha Christian.[3]

¶ 3      On November 20, 2024, the Bank moved for an order of confirmation of the sale. The Superior Court granted the motion and confirmed the sale about five months later on April 16, 2025.[4] The docket sheet contains no activity during this five-month interval, save for a notice of change of contact information for the Bank's counsel.

---

[1] Apparently the LLC held title to the Property, and Gabrielle and John Frongillo are the beneficial owners of the LLC and personally guaranteed the mortgage loan. For clarity, while we refer to all three as the "judgment debtors," Gabrielle Frongillo, proceeding *pro se*, is the sole appellant and represents only her interests in the proceeding.

[2] We take judicial notice that Judge Robert A. Molloy, who had been assigned to this case, was appointed in 2020 to the United States District Court of the Virgin Islands.

[3] The record is silent on whether title has transferred and who is in actual possession of the Property at present. To date, Kisha Christian has not sought to intervene in this case.

[4] Presiding Judge Debra S. Watlington signed the confirmation order, though the docket sheet does not specify precisely when this case was reassigned after Judge Molloy's appointment to the federal bench. The presiding judge of the Superior Court has authority to assign and reassign cases, including to himself or herself, to "secure the prompt dispatch of the business of the court." *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 574 & n.4 (V.I. 2015) (quoting 4 V.I.C. § 72b(a)).

*Frongillo v. Bank of St. Croix, Inc.*     2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 3 of 12

¶ 4     The Bank then moved to backdate confirmation of the sale *nunc pro tunc* to November 20, 2024—the date of the Bank's original motion for confirmation of the sale. On May 15, 2025, the court granted the Bank's motion. The court observed that upon confirmation of a marshal's sale, Virgin Islands law gives the judgment debtor six months to exercise his right of redemption—that is, his ability to reclaim the property by paying off the outstanding debt, plus taxes and interest. *See* V.I. CODE ANN. tit. 5, § 496; 28 V.I.C. § 535. The court held, however, that it could shorten the six-month redemption period in "equitable circumstances." In its view, if there were a lapse of time between the judgment creditor's motion for confirmation and the court's order of confirmation, the court could properly backdate its order to the date the motion was filed. The court explained that doing so would prevent undue extension of the redemption period and ensure that judicial delay in confirming the sale would not penalize judgment creditors. The court cited a Third Circuit case, *Villanueva v. Daniel*, 512 F.2d 308 (3d Cir. 1975), for support. The court then entered a separate order amending confirmation of the marshal's sale *nunc pro tunc* to November 20, 2024.

¶ 5     Frongillo, proceeding *pro se*, timely appealed. *See* V.I. R. APP. P. 5(a)(1). Her brief—which is mostly in bullet-point format—argues that the Superior Court erred in amending confirmation *nunc pro tunc* because it reduced her time to redeem the Property despite the statutory six-month guarantee. Seeking reversal of the *nunc pro tunc* order, she asks that we hold that her six-month redemption period started when the Superior Court originally confirmed the marshal's sale on April 16, 2025.[5] The Bank, for its part, asks us to affirm, relying entirely on *Villanueva*.

---

[5] Frongillo's brief actually says "April 10, 2024." We instead use April 16, 2025, which is the operative date of confirmation. The "operative date from which the six months [for redemption] is calculated is the date of *entry* of the order." *Miller v. Sorenson*, 67 V.I. 861, 873 (V.I. 2017) (emphasis added). Here, the presiding judge dated the confirmation order April 9, 2025, the clerk attested to it on April 10, and the clerk formally entered the order on April 16. Thus, using April 16, 2025, as Frongillo's requested relief date is consistent with *Miller*.

*Frongillo v. Bank of St. Croix, Inc.*            2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 4 of 12

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

¶ 6     The Supreme Court has jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court. 48 U.S.C. § 1613a(d); 4 V.I.C. § 32(a). Generally, a decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Beachside Assocs. v. Fishman*, 53 V.I. 700, 706 (V.I. 2010) (quoting *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008)). Here, the Superior Court has already entered judgment; the matter on appeal concerns only execution of the judgment. The Superior Court disposed of the sole issue before it—confirmation of the marshal's sale *nunc pro tunc*—thereby bringing this foreclosure action to an end. Therefore, so far as the Superior Court was concerned, the *nunc pro tunc* order left nothing further for it to do, resulting in an appealable final order.

¶ 7     We review the Superior Court's factual findings for clear error and its legal conclusions *de novo*. *Daley-Jeffers v. Graham*, 69 V.I. 931, 935 (V.I. 2018). The standard of review for a *nunc pro tunc* entry is *de novo* where, as here, the appeal presents a question of law. *See, e.g.*, *Edward v. GEC, LLC*, 67 V.I. 745, 752 (V.I. 2013) ("This Court exercises plenary review of the Superior Court's application of law."); *see also Nisenan Tribe v. Jewell*, 650 Fed. Appx. 497, 499 (9th Cir. 2016) ("To the extent Appellants are challenging the district court's jurisdiction to enter such order *nunc pro tunc*, our review is *de novo*. To the extent Appellants challenge the district court's exercise of its discretion to issue an order *nunc pro tunc*, we review the court's ruling for abuse of discretion.") (citation omitted).

### B. The *Nunc Pro Tunc* Order

¶ 8     If the judgment debtor in a mortgage foreclosure action desires to redeem property sold in a marshal's sale, he must do so "within six months after the order of confirmation of sale." 28

*Frongillo v. Bank of St. Croix, Inc.*  2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 5 of 12

V.I.C. § 535; *accord* 5 V.I.C. § 496. On April 16, 2025, the Superior Court confirmed the sale of the Property, setting October 16, 2025, as the deadline for redemption. But a month later the Superior Court entered the *nunc pro tunc* order at issue, backdating confirmation and, concomitantly, the start of the redemption period to November 20, 2024. That order changed the redemption deadline to May 20, 2025—a difference of nearly five months. Frongillo maintains that the *nunc pro tunc* order is invalid and that the court exceeded its authority to adjudicate confirmation of marshal's sales.

¶ 9    We have had little occasion to pass upon the scope of *nunc pro tunc* entries. Since this appeal squarely presents the issue, we take this opportunity to address it. Latin for "now for then," *nunc pro tunc* has a particular purpose: to make the record "speak the truth." *Fowler v. Equitable Tr. Co.*, 141 U.S. 384, 394 (1891). *Nunc pro tunc* addresses a situation in which the record contains an inaccuracy about the court's actions, such as a clerical error or an omission of an order that the court actually made. *See John v. People*, 63 V.I. 629, 636 n.1 (V.I. 2015). A *nunc pro tunc* entry resolves this situation by correcting the error or entering the omission *now* and backdating its effect as if the entry had been made *then*. Therefore, as applied to court orders, a *nunc pro tunc* entry is valid only if (1) the court actually performed the act being entered or corrected, which requires evidence of that act's essence and existence in fact; and (2) the record omits the act or describes the act inaccurately. These propositions make plain that the ambit of *nunc pro tunc* is narrow and its use, accordingly, is to be infrequent. *Nunc pro tunc* entries properly may be used to correct scrivener's errors. *See Brooks v. Gov't of the V.I.*, 58 V.I. 417, 428 (V.I. 2013) (mislabeled parties); *Wessinger v. Wessinger*, 56 V.I. 481, 485 n.4 (V.I. 2012) (same); *Simpson v. Golden Resorts, LLLP*, 56 V.I. 597, 602 (V.I. 2012) (omitted exhibits); *Velazquez v. People*, 65 V.I. 312, 316 n.1 (V.I. 2016) (jury verdict mistakenly transcribed as first-degree, not third-degree, assault); *John*, 63

*Frongillo v. Bank of St. Croix, Inc.*  2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 6 of 12

V.I. at 636 n.1 (similar). They may also memorialize an oral ruling actually made from the bench in a subsequent written judgment. *See Walters v. Parrott*, 58 V.I. 391, 397 (V.I. 2013); *In re Drue*, 57 V.I. 517, 521 (V.I. 2012). In either case the *nunc pro tunc* entry remains true to its end, for by entering or correcting at present what the court in fact did in the past, the entry does nothing more than ensure that the record accurately reflects the reality of what the court has done.

¶ 10    What *nunc pro tunc* entries cannot do is "make the record what it is not." *Roman Cath. Archdiocese v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020). Put differently, *nunc pro tunc* requires some factual basis for itself. A *nunc pro tunc* entry cannot purport to place on the record a fact or act that never occurred. Nor may it backdate an order the court never actually made—even one that, in hindsight, *ought* to have been made but was not. Indeed, a court cannot "make it appear that it took an action which it never took," *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990), so the "failure of a court to act, or its incorrect action, can never authorize a *nunc pro tunc* entry," *Recile v. Ward*, 496 F.2d 675, 680 (5th Cir. 1974). Moreover, because a *nunc pro tunc* entry merely ensures the accuracy of the record, a valid entry does not alter the rights of the parties at law. By aligning the record with the substance of the court's judgment, the *nunc pro tunc* entry alters the *record*, not the judgment, and only as a matter of evidence. The entry does not revise matters of fact or alter the scope of the judgment, neither expanding nor diminishing the rights and duties fixed by it. Thus, *nunc pro tunc* is not an "Orwellian" vehicle for revisionist history. *Acevedo Feliciano*, 589 U.S. at 65. If a *nunc pro tunc* entry indeed purports to "rewrite history," it is void. *Cent. Laborers' Pension, Welfare, & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir. 1999).

*Frongillo v. Bank of St. Croix, Inc.*　　　　2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 7 of 12

¶ 11　Before applying these principles to this case, we note that federal[6] and state[7] court decisions consistently have reaffirmed the bounds of *nunc pro tunc*. *See also* 21 C.J.S. *Courts* § 247 (collecting cases and discussing scope); 56 AM. JUR. 2D *Motions, Rules and Orders* § 62 (same). These principles are long settled; the roots of *nunc pro tunc* ultimately lie in the common law of England. *See, e.g.*, *Jesson v. Brewer* (1763), Dick. 370, 21 Eng. Rep. 312 (using *nunc pro tunc* to place on the record a copy of a 1684 decree in Chancery, the original having been lost); *see also Wight v. Nicholson*, 134 U.S. 136, 144 (1890) (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *407–08 (1768)); A.C. FREEMAN, A TREATISE ON THE LAW OF JUDGMENTS 51 n.2 (2d ed. 1874) (collecting English cases). And the common law was long ago made part of the foundation of Virgin Islands law, just as it was in federal and state courts. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 976 (V.I. 2011) (discussing 1 V.I.C. § 4 and noting that its prede-

---

[6] *See, e.g.*, *Acevedo Feliciano*, 589 U.S. at 65; *Gagnon v. United States*, 193 U.S. 451, 456–57 (1904); *Hickman v. City of Fort Scott*, 141 U.S. 415, 418 (1891); *Wight v. Nicholson*, 134 U.S. 136, 144 (1890); *Aetna Ins. Co. v. Boon*, 95 U.S. 117, 125–26 (1877); *Gray v. Brignardello*, 68 U.S. (1 Wall.) 627, 636 (1863); *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383–84 (4th Cir. 2012); *Recile*, 496 F.2d at 680; *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 761 (6th Cir. 2017) (applying Michigan law); *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995); *United States v. Suarez-Perez*, 484 F.3d 537, 541 (8th Cir. 2007); *Cairns v. Richardson*, 457 F.2d 1145, 1149 (10th Cir. 1972) (applying Kansas law); *Stansell v. Revol. Armed Forces*, 771 F.3d 713, 747 (11th Cir. 2014).

[7] *See, e.g.*, *Shinn v. Ariz. Bd. of Exec. Clemency*, 521 P.3d 997, 1002 (Ariz. 2022); *Ford Motor Co. v. Washington*, 431 S.W.3d 210, 222 (Ark. 2013); *Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995); *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 663 (Mo. 2014) (*en banc*); *CBI, Inc. v. McCrea*, 285 P.3d 429, 432 (Mont. 2012); *Continental Oil Co. v. Harris*, 333 N.W.2d 921, 923 (Neb. 1983); *Mack v. Estate of Mack*, 206 P.3d 98, 107 (Nev. 2009); *Gletzer v. Harris*, 909 N.E.2d 1224, 1228–29 (N.Y. 2009); *Application of Okla. Nat. Gas Co.*, 715 P.2d 477, 478 (Okla. 1985); *State v. Stark*, 307 P.3d 418, 427–28 (Or. 2013); *Ex parte Strom*, 539 S.E.2d 699, 702–03 (S.C. 2000); *Brake v. Payne*, 597 S.E.2d 59, 64 (Va. 2004); *State v. Hendrickson*, 198 P.3d 1029, 1031–32 (Wash. 2009) (*en banc*).

*Frongillo v. Bank of St. Croix, Inc.*  2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 8 of 12

cessor in the 1921 Codes had provided that "[t]he common law of England as adopted and understood in the United States shall be in force" in the Virgin Islands, "except as modified by" the provisions of the Virgin Islands Code).

¶ 12     Frongillo maintains that the Superior Court's *nunc pro tunc* order runs afoul of these principles. We agree. The order did not supply an omission in the record about what the court *did* do; it attempted to accomplish something that the court did *not* in fact do. Specifically, the order backdated confirmation of the marshal's sale from April 16, 2025, to November 20, 2024. The latter date is significant only because the Bank filed its motion for confirmation on November 20, 2024; the *court* did nothing on that date. Thus, at all times prior to the *nunc pro tunc* order the record accurately reflected the Superior Court's actions—as well as its inaction. The effect of the order was to give the false impression that the court performed some act on November 20, 2024, and that is not the purpose of a *nunc pro tunc* entry. *Jenkins*, 495 U.S. at 49.

¶ 13     Nor did the *nunc pro tunc* order attempt to correct a clerical mistake in the record. In fact, since the Superior Court did not enter anything on the record on November 20, 2024, we cannot "even conjecture what the errors and mistakes were which it was desirable to correct." *Gray v. Brignardello*, 68 U.S. (1 Wall.) 627, 636 (1863). On the contrary, the order significantly truncated Frongillo's time for redemption—a substantive right the duration of which is guaranteed by statute. *See* 5 V.I.C. § 496; 28 V.I.C. § 535. The order is quite unlike the *nunc pro tunc* orders we have upheld, which fixed mislabeled parties, attached omitted exhibits, or corrected clerical errors of a similar sort. We recognize that the Superior Court may have thought its "error" was that it ought to have ruled—or even intended to rule—on the Bank's motion sooner than it did. If so, a desire to correct that inaction would be understandable, if not laudable, but a *nunc pro tunc* entry may not add anything to the record that the record does not already reflect in some way, even if the

*Frongillo v. Bank of St. Croix, Inc.*　　　　　2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 9 of 12

court "should have included or intended to include the omission or has a laudatory motive" for correcting its error. *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 663 (Mo. 2014).

¶ 14　The Bank endeavors to ground the *nunc pro tunc* order in *Villanueva v. Daniel*, 512 F.2d 308 (3d Cir. 1975), as did the Superior Court. But *Villanueva* is inapposite.[8] Although *Villanueva* reviewed a *nunc pro tunc* confirmation of a statutory marshal's sale in the Virgin Islands, its holding rested on a crucial fact that is absent in this case: The judgment debtor in *Villanueva* contracted away her statutory right of redemption. She renounced the right in exchange for the purchaser's promise to divide the property at issue and convey part of it back to her. *Id*. at 309. This contract, *Villanueva* concluded, altogether determined the propriety of *nunc pro tunc* confirmation. The debtor's statutory redemption rights were "replaced by her rights under the [contract]." *Id*. at 310. Indeed, the debtor knew that she was relinquishing her statutory redemption right as consideration for part of the property while the redemption period was underway because the contract "explicitly assumed" that confirmation had already taken place. *Id*. Thus, *nunc pro tunc* confirmation in *Villanueva* would have neither impaired statutory redemption nor altered the rights of the parties, for the debtor did not so much *lose* her statutory rights as *waive* them. *Id*. In the present case, however, Frongillo never waived or contracted away that statutory right. Necessarily, then, the *nunc pro tunc* order *did* impair her right of redemption, eliminating over eighty percent of the time Frongillo was statutorily afforded to invoke it. Given these factual differences, *Villanueva* is not a case in point.

---

[8] We also note that the Third Circuit's interpretations of Virgin Islands statutes, though entitled to great respect, are not binding on this Court. *Vlaun v. Briscoe*, 2022 VI 18, ¶ 18; *Petric v. People*, 61 V.I. 401, 409 n.6 (V.I. 2014) (citing *Defoe v. Phillip*, 56 V.I. 109, 119 (V.I. 2012)).

*Frongillo v. Bank of St. Croix, Inc.*        2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 10 of 12

¶ 15    In sum, the mortgage judgment debtor has a statutory right of redemption. 5 V.I.C. § 496; 28 V.I.C. § 535. He may invoke it, assign it, or waive it, as he chooses. 5 V.I.C. § 493(1); 28 V.I.C. § 535; *Villanueva*, 512 F.2d at 309. The statutory text is plain: To invoke the right the debtor need only pay the marshal the requisite sum within six months. 5 V.I.C. §§ 496, 498; 28 V.I.C. § 535; *Miller v. Sorenson*, 67 V.I. 861, 873–74 (V.I. 2017). And the right vests *ex proprio vigore*; it attaches without any need for the debtor to contest a creditor's motion or respond to the court's confirmation or await a *nunc pro tunc* determination. Accordingly, when the Superior Court confirmed the marshal's sale of the Property in April of 2025, Frongillo's six-month redemption period began to run. 5 V.I.C. § 496; 28 V.I.C. § 535. But then the court entered the *nunc pro tunc* order at issue, backdating confirmation to November 20, 2024, and substantially shortening Frongillo's redemption period. The *nunc pro tunc* order did not correct a clerical mistake. Nor did it memorialize an order inadvertently omitted from the record on November 20. Instead, it backdated presently an act the court did not in fact perform on that date; it made the record what it was not. *Cf. Acevedo Feliciano*, 589 U.S. at 65. The outright failure of a court to act will not authorize a *nunc pro tunc* entry. *Recile*, 496 F.2d at 680. *Villanueva*, meanwhile, is harmonious with these propositions. Just as the court cannot, absent consent, artificially extend the redemption period once it has been waived or has run, *see Villanueva*, 512 F.3d at 310, so also the court cannot shorten it once it has begun. *See also Moore v. Meek*, 8 Kan. 153, 157–58 (1871) (rejecting creditors' request to cut off debtor's right of redemption *nunc pro tunc* before redemption period had begun to run). We therefore conclude that the Superior Court's *nunc pro tunc* order was in error.

¶ 16    Finally, we address what remains of Frongillo's redemption period following reversal. The original confirmation order set October 16, 2025, as the deadline for redemption. The *nunc pro tunc* order had the effect of changing the deadline to May 20, 2025. That is a difference of 149

*Frongillo v. Bank of St. Croix, Inc.*      2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 11 of 12

days deducted from her redemption period. Having determined that the Superior Court erred in entering the *nunc pro tunc* order, we must fashion an appropriate remedy that gives Frongillo the benefit of the full 149 days that the *nunc pro tunc* order took away. Therefore, the 149 days shall begin to run on the date this opinion and the accompanying judgment are entered on the record. Frongillo may redeem the Property within that time pursuant to statutory procedure. *See* 5 V.I.C. §§ 496, 498; 28 V.I.C. § 535. Otherwise, the right of redemption shall expire when the 149 days elapse.[9]

### III. CONCLUSION

¶ 17    The Superior Court erred in granting the Bank's motion to amend confirmation of the marshal's sale *nunc pro tunc*, the effect of which was to deprive Frongillo of most of the time afforded by statute to redeem the Property after the sale. Therefore, we reverse the Superior Court's twin orders of May 15, 2025, which granted the Bank's motion and amended confirmation *nunc pro tunc*, and we remand with instructions that the 149 days remaining in the redemption period are hereby restored to Frongillo and shall begin to run from the date this opinion and accompanying judgment are entered on the record.

**Dated this 9th day of March 2026.**

---

[9] We note that Frongillo did not post a supersedeas bond or seek a stay pending appeal. *See* V.I. R. APP. P. 8(b). But the Bank did not object to Frongillo's failure to do so in its appellate brief, and "issues not adequately presented and briefed are waived." *Miller*, 67 V.I. at 867 n.4; *accord* V.I. R. APP. P. 22(m); *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 183 (V.I. 2012) (holding that appellees' failure to brief a matter on appeal waives the matter).

*Frongillo v. Bank of St. Croix, Inc.*       2026 VI 3
S. Ct. Civ. No. 2025-0034
Opinion of the Court
Page 12 of 12

BY THE COURT:

/s/ Rhys S. Hodge
**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**

**DALILA PATTON, ESQ.**
**Acting Clerk of the Court**

**By: /s/ Reisha Corneiro**
         **Deputy Clerk II**

**Dated: March 9, 2026**